302 So.2d 672 (1974)
James A. BREAUX, Sr., Plaintiff and Appellant,
v.
The GREAT ATLANTIC & PACIFIC TEA CO., INC., Defendant and Appellee.
No. 4710.
Court of Appeal of Louisiana, Third Circuit.
October 16, 1974.
Rehearing Denied November 20, 1974.
Writ Refused January 10, 1975.
Daniel L. Regard, New Iberia, for plaintiff-appellant.
James A. Hayes, Lafayette, for defendant-appellee.
Before FRUGÉ, HOOD, and DOMENGEAUX, JJ.
DOMENGEAUX, Judge.
Plaintiff-appellant, James A. Breaux, Sr., instituted this suit seeking maximum workmen's compensation benefits for a disabling lower back injury allegedly sustained during the course and scope of his employment with The Great Atlantic & Pacific Tea Co., Inc. (hereafter referred to as A & P). The trial judge, in a written opinion, concluded that plaintiff failed to establish that his disability was due to an accidental injury sustained during his employment, and accordingly rendered judgment in favor of the defendant-company, A & P. Plaintiff has appealed devolutively to this court.
The sole issue presented by this appeal is: Did plaintiff have an accident in the course and scope of his employment which is causally related to his present disability?
On or about November 7, 1972, the plaintiff was employed as a stock clerk for one of two A & P stores located in New Iberia, Louisiana. Previously thereto he had worked for the company for approximately 17 years in various positions. On said date plaintiff alleges that the following took place: At approximately 4:30 P. M., while picking up a case of 46-ounce orange juice cans, he experienced a sharp pain in his lower back. Shortly thereafter the store manager, Charles Breaux, passed by the plaintiff and struck up a conversation. Plaintiff contends that he told the *673 manager that he had hurt his back by picking up the case of orange juice and the manager replied that plaintiff should take a break and have a cup of coffee with him.
The plaintiff's step-son, Samuel I. Breaux, also an employee of A & P, testified that subsequent to the foregoing conversation he noticed that his father was sweating and looked bad, so he inquired as to whether anything was wrong. It was his testimony that the plaintiff told him that he had hurt his back lifting a case of orange juice and that he had informed the manager about it. Plaintiff's step-son further stated that on the way home later that afternoon it appeared the plaintiff was in great pain and could hardly drive.
Upon arrival at the family home, Mrs. Breaux testified she noticed immediately that something was wrong and her husband informed her he had hurt his back at work picking up a case of cans. Both the plaintiff and his wife testified that he had great difficulty sleeping that night because of pain, and the next morning they decided that he should see a doctor. Mrs. Breaux in turn testified she called Charles Breaux, the A & P store manager, to inform him that her husband could not come to work because he was going to a doctor and that he hadn't slept all night and could hardly get out of bed.
The plaintiff and his wife then visited Dr. Roy L. Landry, a New Iberia general practitioner. At this time the plaintiff allegedly informed Doctor Landry that he had hurt his back picking up a case of cans. Supsequent thereto plaintiff did not return to his former employment and saw various doctors including two orthopedists, Dr. Spencer Walton of New Iberia, and Dr. Fred C. Webre of Lafayette. All three of the physicians indicated that plaintiff's lower back condition disabled him from performing the heavy lifting duties of his former employment.
It is clear that there were no eyewitnesses to plaintiff's alleged accident, other than the plaintiff himself. Of course, as pointed out by this court in Clement v. Fidelity & Casualty Co. of New York, 220 So.2d 575 (La.App. 3rd Cir. 1969), "it is a sound principle within our jurisprudence that an accident can be established by the testimony of the claimant alone, if his statements are supported by the surrounding circumstances, and there is nothing to discredit his testimony as to how the accident occurred."
Thus credibility of the plaintiff plays a crucial role in this decision making process. The trial judge is in the best position to make such a decision, rather than an appellate court from a hard, cold record. In this regard the trial judge herein made the following comment in his well-written opinion:
"I was impressed with the sincerety and apparent veracity of Mr. Breaux and that of his wife, Mrs. Breaux, and I believe that they testified to the truth as well as they can recall the events leading to this lawsuit."
From such a statement by the able trial judge no other inference can be drawn but that he believed the aforementioned factual testimony by the plaintiff and his wife. Yet, obviously feeling compelled to follow the principle set down in the aforementioned jurisprudence, he ruled against the plaintiff, holding that a work related accident had not been proven. His conclusion was based upon the legal premise that the surrounding circumstances did not corroborate the testimony of the plaintiff. We feel however, constrained to disagree with our esteemed brother.
The trial judge recognized the corroboration of plaintiff's claim by the testimony of plaintiff's wife and step-son.
Opposed to this, however, he points to the contradictory testimony of Charles Breaux, manager of the A & P store and plaintiff's immediate supervisor. His testimony is to the effect that if plaintiff had told him that he had just had an accident on the day in question he would have sent Breaux to a doctor and filled out an accident report. It is clear that the manager *674 did not file an accident report for the alleged November 7th incident. He further states that upon one occasion after November 7th he visited the plaintiff at the Breaux residence and in response to a question by him concerning whether plaintiff got hurt on the job, Breaux answered: "No, you can't fill out an accident report everytime I've been out." (T. 318-19)
However, in this respect we note that, although an accident report was not filed, nowhere in his testimony does the manager state implicitly that the plaintiff did not discuss with him the alleged accident or the crate of orange juice. It is only "to the best of his recollection" or "don't believe", etc. In fact in response to questioning he stated: (T. 277)
Q. But you do not recall discussing anything about a crate of orange juice or an accident with James Breaux?
A. It's very possible. I'm not saying... so many things happen. It's very possible we did discuss it.
Q. On November 7th?
A. Right.
The manager further admits that Mrs. Breaux called him the morning after the alleged accident to inform him her husband could not come to work because of a back injury and that he was going to a doctor.
In regard to the weight to be given to such testimony as a whole, the trial judge indicated the following: "If this were the only contrary testimony, I would find for the plaintiff, but it is not."
From a reading of the trial judge's opinion, therefore, we can only assume he relied upon the following circumstances to rule against the plaintiff:
(1) the fact that plaintiff did not file an accident report when he knew he was supposed to,
(2) the failure of the plaintiff to inform his several physicians that he was injured on the job until shortly before the suit was filed,
(3) and finally, the entry of information on the application forms for sick pay that the injury was not work related.
Taking these in the order as presented, we turn to the first contention of not reporting the accident. The plaintiff alleges he did in fact tell the store manager that he had hurt himself and that he felt that he had reported it sufficiently. In addition, it is crucial to note that it was the store manager's job to file the accident report and not the plaintiff's. (T. 257, 332). Therefore, in effect, we only have the manager contradicting plaintiff's story, which as aforementioned, the trial judge considered not enough to deny plaintiff's claim.
The second point relied upon by the court was that the plaintiff did not inform his physicians he was injured on the job until shortly before this suit was filed. The plaintiff first saw Dr. Roy Landry the morning of November 8th. Both Mr. and Mrs. Breaux testified the doctor was told that the injury was due to picking up a case of cans. Doctor Landry, however, stated in deposition that his records did not indicate whether plaintiff told him he had been injured on November 7th or the specific reason why he came to his office on that date. His records do indicate however that in November, 1972, his lower back pains "recurred".
The plaintiff was next examined by an orthopaedist, Dr. Spencer Walton who did not testify at trial or by deposition because of failing health. There is in the record, regarding health insurance claims by the plaintiff, the "Attending Physicians Statement"[1] by Doctor Walton (dated 12/8/72Exhibit D 2) to the effect that *675 plaintiff's condition was not due to sickness or injury arising out of his employment. However, there are two contradicting documents signed by Doctor Walton, [filed 3 and 4 months after the aforementioned health insurance claim and approximately 2 and 3 months respectively prior to suit] indicating plaintiff's disability was in fact due to lifting at work and subsequent pain developing. These are claim forms sent to World Service Life Insurance Co. (3/8/73Exhibit P-7) and to Travelers Insurance Co. (4/10/73Exhibit D-3).
On a referral basis, the plaintiff was seen by another orthopaedist, Dr. Fred C. Webre, on January 10 and June 27, 1973, who agreed with the findings (chronic low back condition) of Doctor Walton. Doctor Webre also filed an "Attending Physicians Statement" (regarding health insurance claims by the plaintiff to The Travelers Ins. Co.) wherein he likewise indicated that plaintiff's condition was not due to an injury or sickness arising out of his employment. [Exhibit D-3]. However, in testimony via deposition Doctor Webre indicated that he did in fact recall something recorded in a copy of report from someone else about plaintiff sustaining an injury to his back on November 8, 1972, while lifting a case of canned goods. The trial judge himself indicated such information was probably obtained in conversation with Doctor Walton.
The medical testimony is thus confusing and conflicting in many respects. As a whole, however, we cannot conclude that such evidence, standing alone, is sufficient to preclude plaintiff from recovering.
The third reason given by the court for denying coverage is the fact that the entry of information on the application form for sick pay indicated the injury was not work related. Again, it can be pointed out, however, that the application for sick pay was filled out by the manager of the A & P store. The plaintiff did not sign the application, although a place is provided for such a signature on said form.
From the foregoing we believe that the preponderance of the evidence is to the effect that plaintiff did sustain a work related accident or injury on November 7, 1971. In reaching such a conclusion foremost in our minds is the trial judge's statement of belief in the sincerity and veracity of the plaintiff and his wife. The record shows that plaintiff was able to perform the duties of his employment up to November 7, 1971, the date he claims to have picked up the case of cans causing the onset of pain. Immediately after the alleged accident occurred he told his step-son of the incident and complained of pain. Thereafter the same information was transmitted to his wife, who testified he did not sleep the night of November 7th because of pain. The next morning plaintiff's wife promptly informed his supervisor that he could not come to work because of a back injury. Since that time plaintiff has not returned to the job which he held faithfully for 17 years and there is no question but that he is presently disabled from performing his former duties connected therewith. We opine plaintiff has sustained his burden of proof and is entitled to recover workmen's compensation benefits.
For the above and foregoing reasons the judgment of the trial court is reversed and it is hereby ordered, adjudged, and decreed that there be judgment in favor of the plaintiff, James A. Breaux, Sr., and against the defendant, The Great Atlantic & Pacific Tea Co., Inc. for compensation at the rate of $49.00 per week during disability, not to exceed 500 weeks, beginning November 7, 1972, with legal interest due on each past installment until paid, together with all medical expenses applicable to the injury within the limits of the Act. Costs at both trial and on appeal are hereby assessed against the defendant.
Reversed and rendered.
HOOD, J., dissents, being of the opinion that the judgment rendered by the trial court is correct.
NOTES
[1] Dr. Roy Landry (brother of the aforementioned Dr. Edwin Landry) also filed a similar statement on 12/22/72Exhibit D-9.